**In the Interest of L.B., Minor Child,**

**M.G.B., Mother, Appellant.**

**No. 94–772.**

Court of Appeals of Iowa.

Feb. 28, 1995.

Donna M. Humpal of M.W. Liebbe Law Office, Davenport, for appellant-mother.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for appellee-State.

Stephen P. Wing of Dwyer, Wing, Zamora, Taylor & Walters, Davenport, for appellee-father.

Vincent J. Motto of VanderVennet, Motto & Aitken, P.C., Davenport, guardian ad litem, for minor child.

Heard by DONIELSON, C.J., and SACKETT and CADY, JJ.

CADY, Judge.

This appeal arises from a permanency hearing in juvenile court. M.G., the mother, appeals the court order appointing S.B., the father, to be the guardian of their daughter L.B. Upon reviewing the record, we affirm the trial court's order.

L.B. was born September 6, 1990. M.G. and S.B. never married. L.B. lived with M.G. from her birth until her removal on November 25, 1992. S.B. is not listed on the birth certificate. S.B. and L.B., however, have the same last name and M.G. told her mother S.B. was the father. S.B. has also purchased clothing for L.B. and exercised visitation with her. There has never been a paternity or support action with regard to S.B.

In November 1992, a petition was filed alleging L.B. was a Child in Need of Assistance (CINA) pursuant to Iowa Code sections 232.2(6)(b), (6)(c)(2), and (6)(g) (1991). A Temporary Removal Order was entered based on L.B.'s unexplained injuries.

A subsequent investigation by DHS revealed L.B. was living with M.G. and M.B., M.G.'s male friend. The investigation concluded L.B.'s injuries were a result of her caretaker's actions.

On December 17, 1992 a hearing was held on the temporary placement of L.B. The court placed L.B. in the temporary custody of S.B. under the supervision of the DHS. M.G. was granted weekly supervised visitation.

Although M.G. attended most of the visits provided, she terminated each of them early, leaving one session after only ten minutes.

During the sessions she interacted minimally with L.B. and L.B. was intensely frightened of M.G.

L.B. was Adjudicated CINA in February 1993 pursuant to the grounds alleged in the petition. A specific finding was made that M.B. had abused L.B. and M.G. had failed to intervene or seek appropriate medical care.

A February 1993 case permanency plan indicated S.B. was willing to accept services and M.G. was scheduled to have weekly supervised visitation. M.G. was encouraged to attend domestic violence counseling, and was provided with therapy and parent skill development services.

Following an April 1993 dispositional hearing, the court found M.G. was unwilling to address the issue of physical abuse in an appropriate way. She vacillated between admitting, denying, and minimizing abuse of herself and L.B. She had not participated in a domestic violence program. The order also stated L.B. was being well cared for by her father, and the case should terminate without further order of the court in December 1993.

M.G. gave birth to her second child on July 6, 1993. The same month she fled to a shelter after M.B. beat her. M.B. came to the shelter to find M.G. and assaulted the family resource secretary. M.G. then returned home to M.B.

In a September 1993 review order, the court continued placement of L.B. with S.B. It found M.G. had refused to accept any services which would provide her with a realistic chance of improving the dangerous and abusive environment in her home. It also found M.G. had ceased contact with service providers and L.B. in July, and there was no information about her present circumstances. Finally, the court noted L.B. was doing well in her father's custody, the case should terminate as previously ordered, and the father should bear the responsibility of obtaining a permanent custody order and an order placing appropriate limitations on visitation.

In November 1993, M.B. was convicted of criminal mischief and assault with injury for attacking the family resource secretary. The next day, M.G. married M.B.

In December 1993, S.B. filed an application with the juvenile court requesting the court to retain jurisdiction over the case and enter a permanency order. The application was granted and a permanency hearing was held in January 1994.

M.G. was pregnant with M.B.'s second child and testified she wanted L.B. to live with her and her husband. There was undisputed testimony S.B. was providing L.B. appropriate care. The court found L.B. would suffer adjudicatory harm if returned to M.G.'s home and reasonable efforts and been made to resolve the harm. *See* Iowa Code § 232.2(6) (1993). The court appointed S.B. as guardian and custodian of L.B. pursuant to Iowa Code section 232.104(2)(d)(1) (1993) and granted M.G. visitation rights. The court also ordered a review in twelve months.

M.G. appeals. M.G. first contends S.B. did not acknowledge paternity of L.B. within a reasonable time and therefore she was the sole custodian. She next asserts the court erred in finding sufficient services had been offered to correct the situation which led to adjudication. She finally claims there was not convincing evidence that L.B. could not be returned to her home.

## I.

Our scope of review is de novo. *In re L.K.S.*, 451 N.W.2d 819, 821 (Iowa 1990). We review the facts and the law and adjudicate the rights of the parties anew on those issues properly preserved and presented to us. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). Although we are not bound by the juvenile court's findings of fact, we give them weight, especially when considering the credibility of witnesses. *In re D.T.*, 435 N.W.2d 323, 329 (Iowa 1989). Central to our determination are the best interests of the child. Iowa R.App.P. 14(f)(15). We look to both the child's long range and immediate interests.

## II.

M.G. initially claims S.B. failed to assert his paternity within a reasonable time and she, therefore, has the right to sole custody of the child. She bases her assertions on Iowa Code section 600B.40 (1993).

This section states in part, "The mother of a child born out of wedlock, whose paternity has not been acknowledged and who has not been adopted, has sole custody of the child unless the court orders otherwise."

M.G. has never previously raised this issue. Moreover, our review of the record indicates S.B. acknowledged paternity of the child. Prior to the CINA proceedings he visited L.B. and provided her with clothing. He also requested M.G. to give him custody of L.B. Since the CINA hearing, S.B. has affirmatively sought her placement with him and has taken complete responsibility for her care. He has submitted himself to the court's jurisdiction, been cooperative with case workers, and participated in parenting classes. We find no merit in M.G.'s argument.

### III.

M.G. argues she was offered insufficient services to reunite her with L.B., particularly in light of her cerebral palsy. She claims, following L.B.'s placement with S.B. all the services were directed toward S.B.

The record, however, does not support M.G.'s claims. The December 1992 case permanency plan recommended supervised visitation, parenting classes, anger management assistance, and domestic abuse counseling for M.G. The April dispositional order also notes services should be provided to M.G. in accordance with the case permanency plan. The Family Resources social history/quarterly report indicates M.G. was enrolled in parenting classes until she was dismissed for inadequate attendance. The September 1993 case plan likewise considered M.G.'s need for services.

There is nothing in the record indicating all the services were directed to S.B. or that the court did not consider returning custody to M.G. if she resolved the outstanding issues of domestic abuse and lack of bonding with L.B. Rather, the record reveals the professionals involved in this case repeatedly attempted to help M.G. address these issues. M.G., however, refused their assistance in the area of domestic abuse. We conclude the permanency order was the result of M.G.'s inability or unwillingness to address the issue of domestic violence in her home, not a result of inadequate services.

### IV.

M.G. contends the juvenile court erred in finding there was clear and convincing evidence L.B. could not be returned home. After reviewing the record we disagree.

We recognize M.G. made advancements in her parenting skills and interaction with her daughter as result of the parenting classes she attended. She has, however, failed to recognize the abuse perpetrated by her husband M.B. It is essential in meeting a child's needs that parents recognize and acknowledge abuse. *In re H.R.K.*, 433 N.W.2d 46, 50 (Iowa App.1988). Meaningful change cannot occur without this recognition. *Id.*

The juvenile court was correct in concluding the ongoing presence of M.B. in M.G.'s life and home presents a continuing danger to L.B.'s well-being. M.G. has reported physical abuse by M.B. on several occasions but has continually failed to accept assistance or remove herself from the situation. M.G.'s choice to remain with M.B. prevents her from providing a safe nurturing environment for L.B. We find there is clear and convincing evidence L.B. could not be returned to M.G.'s home and affirm the permanency order.

**AFFIRMED.**