# IN THE COURT OF APPEALS OF IOWA

No. 17-1906
Filed March 21, 2018

**IN THE INTEREST OF R.A., S.A., A.A., and K.A.,**
**Minor Children,**

**L.A., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Romonda D. Belcher, District Associate Judge.

        A father appeals the termination of his parental rights.  **AFFIRMED.**

        Justin J. Gross of Community Lawyers of Iowa, P.L.C., Des Moines, for appellant father.

        Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

        Erin E. Mayfield of Youth Law Center, Des Moines, guardian ad litem for minor children.

        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

The father appeals the termination of his parental rights to his children A.A., born in November 2009, and K.A., born in December 2010.[1][2] The father's rights were terminated pursuant to Iowa Code section 232.116(1)(d), (f), and (i) (2017). The father argues there is not clear and convincing evidence to terminate his parental rights on any of the three grounds for termination and termination is not in the children's best interests.

## I.    Background Facts and Proceedings.

This family has previously been involved with the Iowa Department of Human Services (DHS). In July 2012, DHS filed a founded report of denial of critical care and failure to provide proper supervision. The father, a truck driver at the time, left the children home alone with their mother for a period of days. The mother in this case is physically and mentally unable to care for the children—she is unable to speak or walk without assistance—and is considered a dependent adult by DHS. The mother was found wandering the neighborhood, and the children—then ages one and two—were home with their siblings, ages ten and twelve. DHS informed the father he could not leave the children alone without another adult to supervise, as their mother was not able to do so. In September 2012, DHS filed another founded report of denial of critical care when workers

---

[1] The mother's parental rights were also terminated. She is a dependent adult in the care of a guardian. She does not appeal.

[2] The mother and father in this case have four children together. R.A., born June 2000, and S.A., born April 2002, were also involved in the child-in-need-of-assistance (CINA) and termination proceedings. All four children were removed at the same time and have resided together at the same foster home. The father's parental rights to R.A. and S.A. were not terminated. R.A. and S.A objected to termination because it would require them to move from their current placement with their foster parents. The juvenile court placed these older children in a guardianship with their foster parents.

visited the home to find the children alone with their mother. The father was again told the children cannot be left home alone with their mother.

This case started when the children were removed in May 2014 after the father left the children alone with their mother for over a month to look for work in his home country of El Salvador. The house was unlivable; it was infested with cockroaches, the plumbing was inoperable, and feces was present throughout the house. The mother and the oldest child, R.A., had to be hospitalized upon removal; R.A. had severe mental-health issues resulting from the pressure of having to care for her family. The children were placed with a foster family and were adjudicated children in need of assistance in August.

The children reported domestic violence in the home. R.A. and S.A. reported their father severely beat and choked their mother, and medical professionals have suggested this abuse caused her mental and physical disabilities. R.A. and S.A. reported their father perpetrating physical and emotional abuse towards themselves and their siblings.

In June the father tested positive for cocaine use. He has not tested positive for drugs since.

By March 2015, the father had cleaned up the home and was attending individual therapy. At the permanency review hearing that month, the court was concerned with the father's abilities to parent the children. The father struggled with managing all of the children during visitation—often expecting the older two children to take care of the younger two—had inappropriate conversations with the children, and was inconsistent in his visits due to his work schedule.

In October 2015, the court ruled reasonable efforts by the department had not been made. DHS had recommended specific services such as a psychological evaluation and parenting classes, but had not assisted the father, a Spanish speaker, in obtaining these services in his native language. The court found reunification may be possible if the father progressed in the following factors and behavioral changes: "father attends parenting classes; continues to engage in therapy to address his own trauma, anger management and how [h]is actions/parenting [i]s affecting the children; participate in afforded visitation as previously ordered; participate in children's therapy as recommended; maintain sobriety; and demonstrate an ability to safely parent the children."

The father completed parenting classes in January 2016, but concerns remain regarding his parenting abilities. The father has not consistently attended visits. The father works nights, causing him to fall asleep during visits or to end visits early because he is too tired. The father has cancelled visits last minute and failed to inform workers, causing the children to be transported an hour-and-a-half roundtrip unnecessarily. The father has consistently asked for weekend visitation; however, family safety, risk, and permanency (FSRP) services do not offer supervision of visitations on weekends.

The court allowed DHS discretion in transitioning to non-professionally supervised visits after participation in family therapy. The children and the father met with a therapist separately to evaluate whether family therapy would be appropriate. The therapist concluded family therapy would not be appropriate until the children receive further therapy to deal with past traumas and the father takes personal accountability for his role in causing the children's trauma.

In August 2016, a permanency review hearing was held. The court subsequently entered an order directing the State to file for termination of parental rights. A termination hearing was held in September 2017, and the father's rights were terminated as to A.A. and K.A.

The father appeals.

## II.     Standard of Review.

We review the juvenile court's decision to terminate parental rights de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "Grounds for termination must be proven by clear and convincing evidence." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Our primary concern is the best interests of the child[ren]." *Id.*

## III.     Discussion.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(d), (f), and (i). The father contends the requirements of each section are not established by clear and convincing evidence. "We only need to find grounds to terminate parental rights under one of the sections cited by the district court in order to affirm its ruling." *In re R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2002).

The juvenile court may terminate a parent's rights pursuant to subsection (f) when the court finds that all the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

The children were older than four, had been adjudicated CINA, and had been removed for forty-one months at the time of the termination hearing. The father argues the children could have been returned at the time of the termination hearing. While the father has made progress, he has never acknowledged the children's trauma or taken responsibility for his actions. Even at the termination hearing, he described himself as "the one who has suffered the most" during his children's removal. "It is essential in meeting a child's needs that parents recognize and acknowledge abuse. Meaningful change cannot occur without this recognition." *In re L.B.*, 530 N.W.2d 465, 468 (Iowa Ct. App. 1995).

The father's psychologist described how his failure to acknowledge his past wrongdoings inhibits him from changing his behavior:

> [The father] also seems to have learned some things about parenting skills and healthy home conditions, but has yet to internalize these skills or commit to working on them out of a genuine acknowledgement that there is/was a more serious problem to be corrected. Specifically, he has been willing only to admit to the lesser of the serious matters that seems to have come to DHS's attention, admitting to some of the unhealthy home conditions, leaving the children unattended, and some parenting skill problems, but continuing to deny any abuse allegations or substance use—both behaviors which typically are congruent with other personality patterns he possesses and which are being reported by his children. His ability to parent critically depends on him becoming able to acknowledge, admit to, and change these abusive patterns.

The father has demonstrated behavior during visits that suggest he would not take on a more active role in parenting. He often left his eldest daughter or FSRP workers to supervise, redirect, and discipline the younger children during

visits.  The father worked nights for a portion of this case and often cancelled visits, fell asleep during visits, or ended visits early because he was too tired or because his work schedule changed.

During visits, the father did not demonstrate appropriate conversations with the children.  Throughout the case, the older children have reported feelings of guilt because their father blames them for DHS's involvement during visits.  The father often lets his children play with his phone, even after being instructed not to.  The children have viewed pornography and photos of their father kissing other women on his phone on separate occasions.  The father showed the children a photo of a dead relative's body on his phone, demonstrating he does not understand what is appropriate for children.

Furthermore, the father has not shown he has safe and adequate housing for the children if they were returned.  While the father has addressed the initial issues with cockroaches, cleanliness, and plumbing, further issues have emerged.  Two instances occurred where men showed up at the house without warning; one involving an exchange of money.  After these incidences, the interpreter did not feel safe returning to the home and the interpreting service refused to work on this case.  On two other occasions, the house contained smoke and an odor severe enough to cause workers to be uncomfortable and to feel physically ill.  The father explained these occurrences as a burnt cord and burnt food.  The children have also reported finding bullets, a gun, and a sword in the home during visits.  FSRP workers subsequently moved visits out of the house for safety purposes.

There have also been concerns regarding the occupants of the home.  After the children were removed, the father obtained a male adult roommate for a period

of time, without clearing the roommate through DHS as a person safe to be around children. The father's adult son and the son's pregnant girlfriend moved into the home in June 2016 and were living there with their newborn child at the time of the termination hearing. There are some concerns whether there are enough bedrooms for the children.

Most concerning, the father has not adequately addressed his anger issues. While the father has participated in therapy and parenting classes, he regularly raises his voice with the children, FSRP workers have ended several visits for safety reasons because the father is angry, and FRSP workers and interpreters have reported feeling intimidated or unsafe around the father. The older children have consistently reported they are afraid to be left alone with their father or attend visits supervised by family friends. They report their father will hug them painfully or pinch them out of sight of the FSRP workers on visits if he is angry with them. Given the reports of domestic violence towards the children and the mother, the father's anger issues indicate a continuing threat if the children were to be returned.

The father argues termination is not in the children's best interests. *See* Iowa Code § 232.116(2). We consider "the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* While the father obviously loves his children and shares a close bond with them, the children have been involved with DHS for over three years of their lives. The father is still not in a position to provide physical, mental, or emotional care for the children. A.A. and K.A. deserve permanency and stability.

We find clear and convincing evidence supports termination of the father's parental rights under Iowa Code section 232.116(h) and termination is in the children's best interests. For these reasons we affirm the termination of the father's parental rights as to A.A. and K.A.

**AFFIRMED.**