# IN THE COURT OF APPEALS OF IOWA

No. 19-1097
Filed November 27, 2019

**IN THE INTEREST OF S.G. and L.B.-A.,**
**Minor Children,**

**J.B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Romonda D. Belcher, District Associate Judge.

A mother appeals a permanency review order entered in the child-in-need-of-assistance proceeding. **AFFIRMED.**

Bo Woolman of Woolman Law Office, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Paul White of Juvenile Public Defender Office, Des Moines, guardian ad litem for minor children.

Considered by Potterfield, P.J., Greer, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**CARR, Senior Judge.**

A mother appeals a permanency review order entered in the child-in-need-of-assistance (CINA) proceeding for S.G., born in 2008, and L.B.-A., born in 2006. On our de novo review, we give weight to the juvenile court's findings, although they are not binding. *See In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003). Our primary concern is the best interests of the children. *See id.*

The juvenile court removed the children from the mother's care in November 2017 after the mother tested positive for methamphetamine. Along with the mother's substance use, the Iowa Department of Human Services (DHS) had concerns about the mother's mental health and her history of relationships with violent men. Two months later, the juvenile court adjudicated the children to be CINA and placed the children under DHS supervision, with S.G. in her father's care and L.B.-A. in foster care.

The mother entered treatment for her substance use in February 2018, which she completed successfully in August 2018. But she continued to struggle with the issues that led to the CINA adjudication. The DHS was concerned that the mother continued to use alcohol and methamphetamine, and the mother admitted using methamphetamine in October 2018. She tested negative for substance use the next month.

At the November 2018 permanency hearing, the DHS recommended the court change the permanency goals to place S.G. in her father's custody and direct the State to file a petition to terminate parental rights to L.B.-A. The permanency order confirmed the CINA adjudication but determined that reunification continue to be the permanency goal. Because the court found the mother was making

reasonable progress in complying with the permanency plan, it continued the children's placement for another six months. *See* Iowa Code § 232.104(2)(b) (2018) (stating that after a permanency hearing, the court may "continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order"). The court found it could return the children home if the mother complied with these requirements:

> sign all necessary medical and service releases; complete mental health evaluation, reengage in individual therapy until successful discharge, and follow recommendations; consistently participate in medication management; obtain appropriate, suitable housing; demonstrate sobriety; comply with drug screens as requested, to include an immediate drug screen patch; consistently engage in interactions and demonstrate appropriate parenting; complete Parenting Education Attachment and Trauma Workshop; actively participate in domestic violence advocacy services, address codependency and health boundaries; [and] continue to actively engage in child's therapy.

Unfortunately, the mother failed to meet the conditions and make the behavioral changes outlined in the permanency order. At the May 2019 permanency review hearing, the DHS recommended that the court direct the start of termination proceedings as to L.B.-A. But the juvenile court found compelling reasons to preserve the mother's relationship with the children based on the children's ages and their relationship with the mother. *See id.* § 232.104(4). Instead, it transferred guardianship and custody of L.B.-A. to his foster parents and transferred sole custody of S.G. to her father. *See id.* § 232.104(2)(d)(1)-(2).

On appeal, the mother makes interrelated arguments about the DHS's duty to "make every reasonable effort to return the child[ren] to the child[ren]'s home as quickly as possible consistent with the best interests of the child[ren]," *see id.* § 232.102(9), and the need to continue the children's placement for another six

months. Both arguments stem from the mother's claim that the DHS worker originally assigned to her case showed bias against reunification and the worker assigned to the case from that point made little to no effort to assist with the goal of reunification.[1] In the mother's view, this bias and inaction impeded any efforts to return the children to her care, essentially negating the six-month continuance granted in the November 2019 permanency order. On this basis, the mother challenges the juvenile court's finding that the DHS made reasonable efforts and its refusal to continue the children's placement a second time.

Clear and convincing evidence supports a finding that the DHS made reasonable efforts to return the children to the mother's care. Although the mother claims the DHS workers hampered reasonable efforts, the record shows the mother failed to follow the requirements listed in the November 2018 permanency order, many of which the DHS workers could not affect. For example, the mother failed to sign the required medical and service releases after withdrawing her consent to release information in October 2018. Because the mother never did so, the DHS could not confirm whether the mother engaged in services to address her mental health and substance use, another requirement listed in the permanency order. The mother's own actions, not those of the DHS workers, are to blame for the mother's failure to make the changes required to have the children returned to her care. *See In re L.B.*, 530 N.W.2d 465, 468 (Iowa Ct. App. 1995).

---

[1] The mother moved for a hearing on reasonable efforts in January 2019, claiming her DHS worker's actions showed she opposed reunification and asking for the worker's removal from her case. That worker stopped working on her case in February 2019 after obtaining new employment. But at the May 2019 permanency hearing, the juvenile court entertained the mother's argument that the actions of the first DHS worker and her replacement impeded reunification efforts.

We also agree that the evidence does not warrant a continuation of the children's placement for six more months. To continue placement, the statute requires a finding that the need for removal will no longer exist at the end of the six-month period. *See* Iowa Code § 232.104(2)(b). But the mother tested positive for amphetamine only weeks before the permanency review hearing despite having completed treatment for substance use. The record suggests that the mother's substance use and involvement in relationships with men who perpetrated domestic violence against her continued throughout the CINA proceedings in spite of the resources she received. The mother missed most of L.B.-A.'s therapy sessions in the months before the permanency review hearing, and the evidence shows she engaged in inappropriate conversations with L.B.-A., who continued to take a parenting role with the mother. Because of the mother's marginal progress in the eighteen months following the CINA adjudication and the changes she must make to have the children returned to her care, we cannot find that the need for removal would no longer exist at the end of the six-month period. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (using the parent's past performance as an indicator of the quality of care the parent can provide in the future). A continuance would only delay permanency for the children contrary to their best interests. *See id.* at 802 (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not 'gamble with the children's future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (citation omitted.)); *In re A.A.G.*, 708 N.W.2d 85, 93 (Iowa Ct. App. 2005) (noting that we view proceedings

where children have been out of the home for twelve months at the time of permanency hearing "with a sense of urgency").

Because we cannot return the children to the mother in spite of the services offered to her, we affirm the permanency review order transferring sole custody of S.G. to her father and guardianship and custody of L.B.-A. to his foster care parents.

**AFFIRMED.**