**IN THE COURT OF APPEALS OF IOWA**
No. 20-1412
Filed February 3, 2021

**IN THE INTEREST OF K.G., K.G., E.G., and E.G.,**
**Minor Children,**

**K.I., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Marshall County, Paul G. Crawford, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Laura A. Eilers of Peglow, O'Hare & See, Marshalltown, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Mary Cowdrey of Public Defender's Office, Marshalltown, attorney and guardian ad litem for minor children.

Considered by Doyle, P.J., Schumacher, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**VOGEL, Senior Judge.**

The mother of K.G., born 2007; E.G., born 2007; K.G., born 2009; and E.G., born 2010, appeals the termination of her parental rights. Agreeing with the juvenile court that the Iowa Department of Human Services (DHS) made reasonable efforts to reunify the family and termination is in the children's best interests, we affirm.

The family came to the attention of DHS in late March 2019, upon a report the mother choked one of the children in the presence of the other children. Other instances of physical abuse soon came to light, and the children were removed on April 6. The children were adjudicated in need of assistance on May 9, and they have not been returned to the mother's care since removal. The mother would not initially admit to committing any abuse and made little to no progress in offered reunification efforts. The State then petitioned for termination of parental rights. After an August 6, 2020 hearing, the court granted the petition. The mother appeals.[1]

We review termination proceedings de novo, giving weight to, but not being bound by, the juvenile court's findings of fact. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

The mother's parental rights were terminated under Iowa Code section 232.116(1)(f) (2020).[2] She acknowledges the grounds exist for termination under

---

[1] The father's parental rights were also terminated; he does not appeal.
[2] Under section 232.116(1)(f), the juvenile court may terminate parental rights if it finds all of the following:
        (1) The child is four years of age or older.
        (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

that code section but claims DHS failed to offer reasonable services for reunification. "[T]he State must show reasonable efforts as a part of its ultimate proof the child[ren] cannot be safely returned to the care of a parent." *In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019) (citation omitted). The parent has an obligation "to object to services early in the process so appropriate changes can be made." *C.B.*, 611 N.W.2d at 493–94. "Our focus is on the services provided by [DHS] and the response by [the parent], not on services [the parent] now claims [DHS] failed to provide." *Id.* at 494.

The mother, as well as the step-father who was living in the home at the time of removal, were both charged with various crimes stemming from the children's accusations. A no-contact order was entered on May 17, 2019, between the mother and the children, which extends until 2024. The mother pleaded guilty to four counts of child endangerment, and her sentences were deferred. The step-father was incarcerated for his crimes against the children. The no-contact order was modified on September 30 to allow the mother contact with the children during therapy, upon approval of the therapists. The mother eventually acknowledged some of the incidences of abuse but denied others and did not believe the accounts of abuse the children reported. As a result of years of abuse, the children have all suffered emotional trauma and undergone various mental-health treatments.

---

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

On March 31, 2020, the mother filed a motion for reasonable efforts primarily seeking access to the children's medical records and the ability to speak directly to the children's therapists. After a May 21 hearing, the court ordered the limited correspondence received by the court be turned over to the mother. A follow-up order directed the State to provide the mother with the names and contact information of the children's therapists and access to the children's medical records.[3] The mother agreed those records were not to include "notes and reports deemed protected medical information by counselors for the children." The juvenile court understood the mother's request may be useful "in understanding the scope of the State's concerns over further reunification efforts."

It was essential that the mother acknowledge and recognize the abuse for any meaningful change to occur. *See In re L.B.*, 530 N.W.2d 465, 468 (Iowa Ct. App. 1995). She continued to minimize the abuse, and none of the children's therapists recommended contact between the children and the mother. It is this lack of therapeutic contact that the mother now claims "severely hampered [her] ability to engage in any type of meaningful progress," and she faults DHS for not getting therapy "on track" soon enough. However, DHS had no control over modifying the no-contact order, which was entered as part of the separate criminal-court proceedings. The mother delayed any cooperation with the services that were offered. In December 2019, more than eight months after removal, the mother had still not begun to cooperate with DHS, including failing to attend an

---

[3] To allow equal access to the parties, the order was amended on July 30 to limit access to those medical records from the children's medical providers that were "in the State's possession."

ordered parenting assessment. In June 2020, the mother had a video therapy session with her two boys. It did not go well, and their behaviors regressed. The two girls' therapists said they were not ready for any contact with the mother, including a therapeutic video visit. The mother's therapist took a similar position, that the mother was not ready for even a video visit with them. From the beginning of the case, DHS informed the mother as to how she could work to reunify with her children. She failed to comply. The court reminded her at every review hearing of her obligations but saw no progress. Therefore, although the mother claims she had "barriers" to reunification, DHS offered her many tools to overcome those barriers. That she refused to work with those tools explains why her rights were eventually terminated. We agree with the juvenile court that reasonable efforts were made by DHS.

The mother also claims termination is not in the children's best interests under Iowa code section 232.116(2). After an in-depth parenting evaluation of the mother was completed on June 19, 2020, the licensed psychologist reported:

> As the pattern has shown there was a lot of abuse going on by [the mother and stepfather] in the home regardless of [the mother's] silence of these actions during the interview. . . .
> The alleged abuse has been consistent throughout the children's interviews and continues to show that [the mother] was withholding information during the interview about her other children, just as she admitted to withholding information from DHS previously.

The report detailed the extreme trauma experienced by each of the children, noting, "The more this situation is drawn out the more this will affect the children's future ability to adequately attach to others, and recover from their trauma." The report concluded by "strongly" recommending the continuation of the no-contact order between the children and the mother as well as the termination of the

mother's parental rights. Insight into what the future likely holds for a child if returned to a parent is gained from evidence of the parent's past performance; it "may be indicative of the quality of the future care that parent is capable of providing." *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (quoting *C.B.*, 611 N.W.2d at 495). The juvenile court, particularly noting the years of abuse impacting the safety of returning the children to their mother, found termination was in the children's best interests. We agree and affirm.

**AFFIRMED.**